UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN D. SHAW,

              Plaintiff,

     v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

              Defendant.

CASE NO.    C05-5807KLS

ORDER REVERSING THE
COMMISSIONER'S DECISION
AND REMANDING FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS

Plaintiff, John D. Shaw, has brought this matter for judicial review of the denial of his application for disability insurance benefits.  The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13.  After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is forty-six years old.[1] Tr. 27. He has a high school education, completed two years of college course work, and has past work experience as a firefighter, an emergency medical technician, a chemical dependency counselor, a resident counselor, a case manager, a consultant, a

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

coordinator-triage/schedule coordinator, and a homecare giver. Tr. 24, 64, 69, 72, 89.

On September 20, 2002, plaintiff filed an application for disability insurance benefits, alleging disability as of November 30, 2001, due to a seizure disorder, bilateral hand tremors, bipolar affective disorder, and osteoporosis. Tr. 15-16, 56, 63.  His application was denied initially and on reconsideration. Tr. 15, 27-29, 34.  A hearing was held before an administrative law judge ("ALJ") on December 16, 2004, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 328-71.

On February 7, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1)   at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2)   at step two, the combined effect of plaintiff's impairments was considered to be "severe";

(3)   at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

(4)   at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which did not preclude him from performing his past relevant work.

Tr. 25-26.  Plaintiff's request for review was denied by the Appeals Council on October 21, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

On December 16, 2005, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for further administrative proceedings for the following reasons:

(a)   the ALJ erred in evaluating the rating of disability plaintiff received from the Department of Veterans Affairs ("VA");

(b)   the ALJ erred in finding plaintiff's mental and physical impairments to be not severe;

(c)   the ALJ erred in evaluating the medical evidence in the record regarding plaintiff's mental impairments;

(d)   the ALJ erred in assessing plaintiff's residual functional capacity;

(e)   the hypothetical question the ALJ posed to the vocational expert was insufficient; and

(f)   the ALJ erred in assessing plaintiff's credibility.

For the reasons set forth below, the Court agrees the ALJ erred in determining plaintiff to be not disabled,

1  and therefore hereby reverses the ALJ's decision, and remands this matter to the Commissioner for further

2  administrative proceedings.

3                                              DISCUSSION

4          This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

5  Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

6  support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9ᵗʰ Cir. 1986).  Substantial evidence is

7  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson

8  v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9ᵗʰ Cir. 1985).  It is more than

9  a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9ᵗʰ Cir.

10  1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

11  one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d

12  577, 579 (9ᵗʰ Cir. 1984).

13  I.        The ALJ Did Not Err in Evaluating the Department of Veterans Affairs' Disability Rating

14          Although a determination by the Department of Veterans Affairs ("VA") about whether a claimant is

15  disabled is not binding on the Social Security Administration ("SSA"), an ALJ must consider that

16  determination in reaching his or her decision. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002);

17  20 C.F.R. § 404.1504.  Further, the ALJ "must ordinarily give great weight to a VA determination of

18  disability." McCartey, 298 F.3d at 1076.  This is because of "the marked similarity" between the two federal

19  disability programs:

20              Both programs serve the same governmental purpose--providing benefits to those
                unable to work because of a serious disability.  Both programs evaluate a claimant's
21              ability to perform full-time work in the national economy on a sustained and continuing
                basis; both focus on analyzing a claimant's functional limitations; and both require
22              claimants to present extensive medical documentation in support of their claims. . . .
                Both programs have a detailed regulatory scheme that promotes consistency in
23              adjudication of claims.  Both are administered by the federal government, and they share
                a common incentive to weed out meritless claims.  The VA criteria for evaluating
24              disability are very specific and translate easily into SSA's disability framework.

25  Id.  However, "[b]ecause the VA and SSA criteria for determining disability are not identical," the ALJ

26  "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so

27  that are supported by the record." Id. (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5ᵗʰ Cir. 2001).

28  Although plaintiff argues otherwise, the ALJ properly did so here.

As noted previously, "a VA rating of disability does not necessarily compel the [SSA] to reach an identical result." Id. (citing 20 C.F.R. § 404.1504). Section 404.1504 of the Commissioner's regulations provides in relevant part:

> A decision by . . . any other governmental agency about whether you are disabled . . . is based on its rules and is not our decision about whether you are disabled . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us.

20 C.F.R. § 404.1504. Thus, because, as discussed above, "the criteria applied by the two agencies" are not identical, "[a] VA rating of total and permanent disability is not legally binding on the Commissioner." Chambliss, 269 F.3d at 522.

In this case, the ALJ found as follows:

> In reaching this decision, the undersigned has considered the VA's determination of service-connected disability. The VA's rating does not, however, necessarily compel the undersigned to reach an identical outcome under the Social Security Regulations. This is especially true where, as here, each impairment has no more than a marginal effect on the claimant's ability to perform household chores, walk every other day, hike, and occasionally work on the computer. S.S.R. [Social Security Ruling] 86-8. Notably, the VA did not base its disability finding on the claimant's inability to secure and follow a substantially gainful occupation, but on the relationship between his tremors and osteoporosis, and his service-connected seizure disorder. On this point, the VA decision specifically noted that the claimant's grip strength was good, despite his tremors, and he had no motor loss. 12E/5. Moreover, the VA decision also found "no evidence of painful or limited motion" in the claimant's joints, and a recent DEXA scan showed that the claimant's bone mineralization is within "normal limits." 12E/6.

Tr. 22. The Court finds the ALJ's determination here to be supported by substantial evidence.

Plaintiff argues the ALJ erred by failing to consider the fact that the VA found his hand tremors were "present all the time" (Tr. 119), as well as the VA medical documentation of those tremors contained in the record. The VA rating decision, however, merely contains a "reasons and bases" section, which consists of a brief summary of the medical and other evidence upon which the decision is founded. That is, the rating decision itself does not contain any original diagnostic or clinical notes, and thus does not alone constitute objective medical evidence. Regardless, the mere fact that plaintiff's hand tremors were noted at one point to always be present, does not alone establish disability. See Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995) (mere diagnosis of impairment does not establish disability); Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

Indeed, the medical evidence in the record does not show those hand tremors prevent plaintiff from performing all work, as is required for a finding of disability under the Social Security Act. Tr. 127, 142,

1    148, 155-56, 160, 163, 167, 201, 234, 252-54, 278-79, 288, 290, 295, 302; Tackett v. Apfel, 180 F.3d

2    1094, 1098 (9th Cir. 1999) (plaintiff must establish inability to engage in substantial gainful activity by

3    reason of medically determinable impairment); 42 U.S.C. § 423(d)(1)(A).  Further, the ALJ did consider the

4    medical and other evidence in the record regarding plaintiff's hand tremors. Tr. 20-21.  Although, as

5    discussed below, the Court agrees the ALJ erred in finding plaintiff's hand tremors to be non-severe, that

6    does not mean the ALJ was required to find him disabled based on that impairment, especially in light of the

7    fairly unremarkable objective medical evidence noted above.

8          Lastly, plaintiff argues the ALJ erred in finding his seizures and osteoporosis also to be non-severe,

9    despite the VA's disability rating.  As explained below, however, the substantial evidence in the record

10    supports the ALJ's non-severity findings regarding those two impairments.  In addition, plaintiff does not

11    explain how, even if the ALJ had erred in finding them to be non-severe, that would require the ALJ to

12    adopt the VA's disability rating.  As noted by the ALJ above, the VA did not base its disability finding on

13    plaintiff's inability to secure and follow a substantially gainful occupation, which is required under the

14    Commissioner's regulations before a disability determination can be made.  Accordingly, the undersigned

15    finds the ALJ did not err in rejecting the VA's rating decision.

16    II.    The ALJ's Step Two Analysis

17          To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step

18    sequential evaluation process. 20 C.F.R. § 404.1520.  At step two of that process, the ALJ must determine

19    if an impairment is "severe."  Id.  An impairment is "not severe" if it does not "significantly limit" a

20    claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), ( c);

21    Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and

22    aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

23          An impairment is not severe only if the evidence establishes a slight abnormality that has "no more

24    than a minimal effect on an individual[']s ability to work."  See SSR 85-28, 1985 WL 56856 *3; Smolen v.

25    Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff

26    has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work

27    activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599,

28    601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used

1  to dispose of groundless claims.  Smolen, 80 F.3d at 1290.

2       Plaintiff argues the ALJ erred in finding his hand tremors, seizures and osteoporosis to be non-

3  severe.  The ALJ found these impairments to be non-severe, because plaintiff's seizures were "well-

4  controlled by medication," and because his hand tremors and osteoporosis did "not significantly limit" his

5  ability to engage in work-related activities.  Tr. 22.  As indicated above, the ALJ erred in finding plaintiff's

6  tremors to be non-severe.  Specifically, the opinion of Dr. Robert G. Hoskins, a non-examining consulting

7  physician, which the ALJ found to be "well-supported" and on which he based his assessment of plaintiff's

8  residual functional capacity (Tr. 24), found plaintiff to be limited to only occasional bilateral handling and

9  fingering (Tr. 201).  Such limitations constitute an abnormality that would have more than a minimal effect

10 on a claimant's ability to perform basic work activities, and thus they are severe.

11      With respect to plaintiff's seizures and osteoporosis, however, the medical evidence in the record

12 supports the ALJ's findings of non-severity.  That evidence shows plaintiff's seizures are well-controlled on

13 medication.  Tr. 127, 142, 148, 156, 160, 163, 165, 167-68, 174, 200, 234, 259, 275-76, 278, 288, 295,

14 302.  Nor does that evidence show his osteoporosis to have had more than a minimal effect on his ability to

15 perform basic work activities.  Tr. 140, 155-56, 236.  Even if the ALJ could be said to have erred in finding

16 these individual impairments to be non-severe, furthermore, the ALJ found "the combined effect of his

17 multiple impairments," including his mental impairments, to be severe, and thus proceeded on to step three

18 and four of the disability evaluation process.  Tr. 22.  Any such error, therefore, would be harmless.  See

19 Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004)

20 (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ

21 committed harmless error).

22      Plaintiff also challenges the ALJ's findings that his mental impairments were not severe.  The ALJ

23 determined plaintiff's bipolar disorder and depression to be non-severe because they were "well-controlled

24 by medication" and did "not significantly limit his ability to engage in basic work activities," specifically

25 finding as follows:

26        Although the claimant has recently experienced homelessness, joblessness, and divorce,
          his mental impairments have not precluded his willingness or ability to work, and he
27        continues to make laudable efforts to find work in a difficult job market.  In addition, the
          medical evidence establishes the claimant has remained goal-oriented (1F/3), exercises
28        regularly, maintains a routine, and takes care of his daughter.  In view of the claimant's
          functional abilities, Dr. [Lance] Harris' December 2002 PRTF specifically rated the

claimant has [sic] having "no limitations" in his activities of daily living, social functioning, or concentration, pace, or persistence, and no episodes of decompensation. 3F/11.  This led Dr. Harris to conclude that that [sic] the claimant's "condition appears to be non-severe." 3F/13.

Tr. 20.

Plaintiff argues his mental impairments "clearly" were severe. Plaintiff's Opening Brief, p. 12.  He asserts that it "flies in the face of reason" that the ALJ based his findings on Dr. Harris' report, when the medical records from his treating physician "clearly indicate that his bipolar disorder" was "ongoing," and that he experienced "cycling moods." Id.  Once more as explained above, however, the mere fact that a claimant experiences the symptoms of a mental impairment does not alone mean the impairment is severe. That is, the impairment must have more than a minimal effect on the claimant's ability to perform basic work-related activities.  Here, the medical evidence in the record, including the diagnostic and treatment notes from plaintiff's treating physician, fails to establish plaintiff's mental impairments have had such an effect on his ability to work.

In early November 2001, plaintiff's treating physician, Dr. Robert F. Barnes, noted that plaintiff's symptoms were "mild" and that he was "coping at work." Tr. 175.  Plaintiff's mental status examinations overall were fairly remarkable as well. Tr. 135, 144, 150, 152-53, 158-59, 161, 170, 242, 282, 285-86, 294, 299, 301.  While he was "[s]ituationally depressed," he remained "fairly functional" and continued to cope "appropriately." Tr. 159, 162.  Dr. Barnes felt his mood probably would "get better" as his circumstances improved. Tr. 159.  Plaintiff's mood also began to improve on medication. Tr. 144.  Indeed, in late October 2002, and again in March 2003, plaintiff's depression was noted to be "consistently less" and his "mood better" due to his medication. Tr. 135, 299, 301.  In early May and late September 2003, Dr. Barnes noted that his mood continued "to be improved and more stable." Tr. 285-86, 294.  Plaintiff's condition remained essentially the same until July 2004, when he ran out of medication. Tr. 240, 242, 282.

Dr. Lolita Velmer, who evaluated plaintiff in late November 2002, like Dr. Harris, essentially found no limitations in plaintiff's ability to work due to his mental impairments. Tr. 124-25, 185, 195-97.  While plaintiff asserts these reports are too old to be reliable, plaintiff alleges an onset date of disability at least a year prior to the dates of these reports.  Further, Dr. Barnes' diagnostic and treatment records, upon which plaintiff relies, also date back to more than a year prior to those reports as well.  Finally, a third examining physician, Dr. Laura C. Ferguson, evaluated plaintiff in early May 2004, and her findings show his mental

status examination to have been fairly unremarkable as well. Tr. 246.

Most significantly though, and contrary to plaintiff's assertion, as shown above both Dr. Velmer's and Dr. Harris' reports are largely consistent with the findings of Dr. Barnes.  That is, none of the medical sources in the record, including Dr. Barnes, have opined that plaintiff suffers from mental impairments which have had more than a minimal effect on his ability to perform basic work-related activities.  Plaintiff points to the fact that Dr. Barnes assessed him with a global assessment of functioning ("GAF") score of 50 and 53 in early September 2002 and late February 2003, respectively, to show that the record supports a finding of severity. Tr. 145, 299.  However, Dr. Velmer found he had a much higher GAF score of 70 in late November 2002. Tr. 124, 135.

As such, even taking into account plaintiff's assessed GAF scores, the substantial evidence in the record supports the ALJ's finding of non-severity. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982) (where evidence in record is not conclusive, resolution of conflicts are solely function of ALJ).  That is, plaintiff has not shown why the lower GAF scores assessed by Dr. Barnes, even though he is a treating physician, are more valid than the higher one assessed by Dr. Velmer.  Nor has he shown why the lower GAF scores in themselves are sufficient to overcome the other very mild clinical and diagnostic findings set forth above, which constitute the majority of the medical evidence in the record concerning his mental impairments.  Regardless, as with the seizures and osteoporosis, the ALJ found the combined effect of plaintiff's impairments to be "severe."  As such, any error on the part of the ALJ regarding his mental impairment severity findings would be harmless as well.

III.   <u>The ALJ Properly Evaluated the Medical Evidence in the Record Concerning Plaintiff's Mental Impairments</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample</u>, 694 F.2d at 642.  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff argues the ALJ accorded inadequate weight to the opinions of Dr. Barnes.  Plaintiff asserts that the ALJ erred in finding the opinion of Dr. Velmer to be consistent with those of Dr. Barnes, and that the ALJ should have given Dr. Barnes' opinions controlling weight.  It is not clear, however, what opinions of Dr. Barnes to which he believes the ALJ should have given controlling weight.  Plaintiff does state the ALJ failed to provide specific and legitimate reasons for rejecting both Dr. Barnes' opinion that his mental

impairments were severe and the GAF score of 53 with which Dr. Barnes assessed him in late February 2003.  Dr. Barnes though never specifically stated or opined that plaintiff's mental impairments were in fact severe.  In addition, as discussed above, plaintiff does not explain why the ALJ was required to adopt this GAF score, as opposed to the higher score with which he also was assessed by Dr. Velmer around the same time, particularly in light of the other very mild objective findings in the record.

Plaintiff further argues the ALJ had a duty to obtain the testimony of plaintiff's VA physician or to submit questions to him.  It is true that the ALJ has the duty "to fully and fairly develop the record and to assure that plaintiff's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).  However, it is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," that the ALJ's duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); Mayes, 276 F.3d at 459.  Here, as discussed above, the medical evidence was neither ambiguous regarding the severity of plaintiff's mental impairments, nor was the record inadequate to allow for a proper evaluation of that evidence.

Plaintiff again refers to the timing of Dr. Velmer's report, but, also as discussed above, that report was fairly contemporaneous with the majority of Dr. Barnes' diagnostic and treatment notes.  Plaintiff also finds fault with the ALJ's reliance on the report of Dr. Harris, asserting such reliance alone is inadequate to constitute substantial evidence.  Plaintiff's point might be valid were Dr. Harris' findings not consistent with other independent evidence in the record.  Here, however, the non-severity opinion of Dr. Harris, as discussed above, was consistent with the majority of the medical evidence concerning plaintiff's mental impairments and limitations, including the findings of Dr. Barnes and Dr. Velmer.

IV.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.  Id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to

1   perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work

2   must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those

3   limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a

4   claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-

5   related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

6   medical or other evidence." Id. at *7.

7          Here, the ALJ assessed plaintiff with the following residual functional capacity:

8          [T]he claimant retains the residual functional capacity to perform light work, with some
           postural limitations with respect to balancing and crawling, and occasional limitations
9          with respect to handling and fingering. . . . the evidence shows the claimant is able to
           stand or walk about 6 hours in an 8-hour workday, and is able to sit up to 8 hours in an
10         8-hour workday, with periodic alternate sitting and standing to relieve discomfort.  The
           claimant should never engage in climbing ramps/stairs or ladders/ropes/scaffolding, and
11         has occasional limitations with respect to handling and fingering.

12  Tr. 23-24.  Plaintiff argues the above findings are not supported by the medical evidence in the record, and

13  the ALJ failed to provide adequate reasons for rejecting that evidence.  The Court disagrees.

14         First, plaintiff does not point to any specific medical evidence in the record that contradicts those

15  findings.  Plaintiff asserts the ALJ did not thoroughly discuss and analyze the medical and other evidence in

16  the record regarding his mental and physical impairments.  The ALJ, however, spent eight pages of his

17  decision doing so. See Tr. 17-24.  Plaintiff further asserts the ALJ did not resolve inconsistencies in the

18  evidence, set forth a logical explanation regarding the effects of his symptoms, or assess his work-related

19  abilities on a function-by-function basis.  Again though, plaintiff does not point to the inconsistencies in the

20  evidence the ALJ was supposed to have resolved.  As just discussed, furthermore, the ALJ did provide a

21  detailed discussion and analysis of the evidence in the record regarding his impairments and limitations.

22  Finally, as clearly can be seen, the above residual functional capacity assessment sets forth plaintiff's work-

23  related abilities on a function-by-function basis.

24         Plaintiff next argues he is limited in his ability to respond appropriately to supervision, co-workers

25  and work situations and to carry out work instructions on a sustained basis, and has difficulty during

26  stressful times in reporting to work regularly.  The medical evidence in the record that actually discusses

27  plaintiff's mental work-related capabilities, however, largely contradicts that argument. See Tr. 124-25,

28  185, 195, 197.  Nowhere in Dr. Barnes' diagnostic and treatment notes, furthermore, is there any indication

1    plaintiff has such limitations, other than the two lower GAF scores, which the Court, as discussed above,

2    found the ALJ properly did not adopt.

3         Lastly, plaintiff argues the above alleged mental functional limitations, along with his bilateral hand

4    tremors, constitute further evidence that he would be severely limited in his ability to perform full-time light

5    work on a regular and continuing basis.  Once more, however, plaintiff points to no specific medical

6    evidence in the record that this is so.  Nor does the Court's own review of that evidence indicate plaintiff's

7    combined limitations rise to that level of severity.  The Court does find re-consideration of the ALJ's

8    assessment of plaintiff's residual functional capacity to be warranted on remand, however, in light of the

9    deficiencies in the ALJ's credibility determination discussed below.

10   V.    The ALJ Erred in Finding Plaintiff Capable of Performing His Past Relevant Work

11        At the hearing, the ALJ posed the following hypothetical question to the vocational expert:

12        [L]et me ask you about an individual that I'm going to describe to you which would
          coincide with that of Mr. Shaw, same age, same educational background and same
13        impairments as have been testified to by Mr. Shaw.  Let me also ask you to consider that
          I find Mr. Shaw's testimony credible and believe every word he tells me and find him
14        capable of doing a light exertional capability of work.

15   Tr. 363.  In response, the vocational expert testified that plaintiff would be capable of returning to his past

16   relevant work. Tr. 363-64.  Based on the vocational expert's testimony, the ALJ found plaintiff capable of

17   returning to his past relevant work. Tr. 25-26.

18        Plaintiff argues the above hypothetical question was incomplete, and therefore the Commissioner did

19   not carry her burden of proof at step four of the disability evaluation process, because all of his mental and

20   physical limitations were not given to the vocational expert.  It is plaintiff and not the Commissioner,

21   however, who has the burden at step four to show he is unable to return to his past relevant work. Tackett

22   v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  Nevertheless, the Court agrees that the ALJ erred in

23   finding plaintiff capable of returning to his past relevant work here.

24        As pointed out by plaintiff, and as noted previously, the ALJ included in his residual functional

25   capacity assessment a limitation to only occasional handling and fingering.  As can be seen above though,

26   the ALJ failed to include this limitation in the hypothetical question he posed to the vocational expert.  As

27   such, the hypothetical question did not include all of the limitations the ALJ himself found plaintiff to have,

28   and to that extent the ALJ erred.  In addition, based on the vocational expert's testimony, it appears that

1  plaintiff's handling and fingering limitation would preclude him from being able to return to his past relevant

2  work.  That is, the vocational expert testified that all of plaintiff's past jobs required the ability to handle and

3  finger frequently, which obviously is greater than occasional. Tr. 366-67.

4        Plaintiff's assertion that the hypothetical question also did not include all of his mental limitations

5  because that question was based on the erroneous determination that those limitations were well-controlled

6  by medication, however, is without merit.  As discussed above, the medical evidence in the record supports

7  the ALJ's finding that plaintiff's mental impairments were non-severe due in part to their being controlled

8  by his medication.  As such, the ALJ did not err in finding those limitations to be non-severe.  On the other

9  hand, the Court does find the hypothetical question to be incomplete in light of the ALJ's statement therein

10  that the vocational expert assume he found plaintiff's testimony to be "credible" and believed "every word"

11  plaintiff told him. Tr. 363.  While plaintiff testified as to having limitations beyond those found by the ALJ

12  (Tr. 340-47, 359-60), the ALJ did not include them all in his hypothetical question.

13  VI.    The ALJ's Assessment of Plaintiff's Credibility

14        Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d

15  639, 642 (9th Cir. 1982).  The court should not "second-guess" this credibility determination.  Allen, 749

16  F.2d at 580.  In addition, the court may not reverse a credibility determination where that determination is

17  based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a

18  claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

19  as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th

20  Cir. 2001).

21        To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

22  disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify

23  what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v.

24  Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering,

25  the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at

26  834.  The evidence as a whole must support a finding of malingering.  O'Donnell v. Barnhart, 318 F.3d 811,

27  818 (8th Cir. 2003).

28        In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

1   evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

2   testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

3   also may consider a claimant's work record and observations of physicians and other third parties regarding

4   the nature, onset, duration, and frequency of symptoms. Id.

5          With respect to the ALJ's credibility determination in this case, the ALJ stated in the body of his

6   decision that plaintiff's "own assessment" of his residual functional capacity was consistent with the report

7   of Dr. Hoskins, who found plaintiff to be capable of performing essentially the full range of light work, with

8   certain limitations on balancing, crawling, handling and fingering. Tr. 24, 199-203.  The ALJ further stated

9   it was "[f]or this reason" that he found plaintiff "to be credible." Tr. 24.  In the "Findings" section of his

10   decision, the ALJ stated that plaintiff's "allegations regarding his limitations" were "credible insofar as they"

11   were "consistent with the objective medical evidence in the record." Tr. 25.

12          Plaintiff argues that while the ALJ stated he found him to be credible, the ALJ actually rejected his

13   subjective complaints, as the ALJ did not consider them in assessing his residual functional capacity, nor did

14   the ALJ include them in the hypothetical question posed to the vocational expert.  Defendant argues the

15   ALJ did properly consider plaintiff's subjective complaints by detailing his activities of daily living and

16   description of his own physical abilities, and by illustrating that those activities and that description were

17   inconsistent with a person who is as impaired as plaintiff alleges himself to be.

18          It is true that the ALJ provided a detailed summary of plaintiff's activities and description of his own

19   physical abilities. Tr. 23.  If the ALJ had stated he was discounting plaintiff's credibility based upon that

20   summary, defendant's argument might be well-taken. Smolen, 80 F.3d at 1284 (to determine whether

21   claimant's symptom testimony is credible, ALJ may consider his or her daily activities).  In this case,

22   however, the ALJ specifically stated he found plaintiff to be credible.  One certainly could infer that the ALJ

23   meant he was finding plaintiff credible only to the extent plaintiff's statements and testimony were consistent

24   with the residual functional capacity opined by Dr. Hoskins. Magallanes, 881 F.2d at 755 (court may draw

25   specific and legitimate inferences from ALJ's opinion).

26          Even so, it is difficult to square that finding with the ALJ's more general subsequent statement that

27   he found plaintiff's "allegations regarding his impairments" to be credible insofar as they were "consistent

28   with [the] objective medical evidence in the record." Tr. 25.  That is, one also might argue that it would be

1   reasonable for the Court to infer that in making this latter statement, the ALJ found plaintiff's statements

2   and testimony regarding his mental impairments and limitations to be credible only insofar as they were

3   consistent with the medical evidence in the record as well.  Such an inference, however, would not be

4   legitimate.  This is because the ALJ gave no indication in the body of his decision that he specifically was

5   discounting plaintiff's credibility on this basis.

6          The Court notes, furthermore, that, as discussed above, in the hypothetical question the ALJ posed

7   to the vocational expert, the ALJ expressly requested that the vocational expert assume he found plaintiff to

8   be credible and that he believed "every word" plaintiff told him. Tr. 363.  In other words, it is not at all clear

9   the extent to which the ALJ found plaintiff to be credible, if at all, and the Court thus is left to guess as to

10  the actual findings of the ALJ regarding this issue.  Accordingly, on remand, the Commissioner shall make a

11  new determination regarding plaintiff's credibility, which contains the requisite level of specificity and more

12  clearly sets forth which of plaintiff's subjective complaints are deemed not credible.

13  VII.    This Matter Should Be Remanded For Further Administrative Proceedings

14         The Court may remand this case "either for additional evidence and findings or to award benefits."

15  Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course,

16  except in rare circumstances, is to remand to the agency for additional investigation or explanation."

17  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in

18  which it is clear from the record that the claimant is unable to perform gainful employment in the national

19  economy," that "remand for an immediate award of benefits is appropriate." Id.

20         Benefits may be awarded where "the record has been fully developed" and "further administrative

21  proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

22  1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

23         (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
           evidence, (2) there are no outstanding issues that must be resolved before a
24         determination of disability can be made, and (3) it is clear from the record that the ALJ
           would be required to find the claimant disabled were such evidence credited.

25  Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because,

26  as discussed above, issues still remain concerning plaintiff's credibility, his residual functional capacity, and

27

28

ORDER
Page - 15

1  his ability to perform other work existing in significant numbers in the national economy,[2] remand of this

2  matter to the Commissioner for further administrative proceedings is more appropriate.

3  CONCLUSION

4       Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff was not

5  disabled.  Accordingly, the ALJ's decision hereby is REVERSED and REMANDED to the Commissioner

6  for further administrative proceedings in accordance with the findings contained herein.

7       DATED this 19th day of July, 2006.

8

9

10                   Karen L. Strombom

11                   United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  [2]Plaintiff asserts that when his mental, handling and fingering limitations were posed to the vocational expert, that expert testified that he would be unable to maintain any employment.  This assertion, however, is without merit.  First, with respect to the handling and fingering limitations, the vocational expert indicated that individuals who could perform such tasks only occasionally would not be precluded from all other work. Tr. 370.  Second, the mental limitations that were posed to the vocational expert, and to which plaintiff refers here, are based solely on a finding that all of plaintiff's statements and testimony are fully credible. See Tr. 367-70.  As explained above, however, it is not at all clear the ALJ actually intended to adopt such a finding. In addition, also as explained above, the medical evidence in the record shows plaintiff's mental impairments to be far less severe than he has alleged.  As such, it remains far from certain that plaintiff is incapable of performing all work.

27

28